IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHLAEGEL,<br><br>    Plaintiff,<br><br>    v.<br><br>PALO ALTO NETWORKS INC., et al.,<br><br>    Defendants | Case No. 3:24-cv-01156-CRB<br><br>**ORDER GRANTING CONSOLIDATION AND APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL** |

    This case arises out of two securities fraud class actions brought on behalf of all persons who purchased or otherwise acquired Palo Alto Networks, Inc. ("Palo Alto Networks") common stock, or who sold put options of Palo Alto Networks, between August 18, 2023 and February 20, 2024. Plaintiffs allege that, during that time period, Defendant Palo Alto Networks and its executive officers made false or misleading statements about the company's financials causing significant losses to class members, in violation of the Securities Exchange Act of 1934 ("Exchange Act").

    Three sets of motions are pending—for consolidation, appointment as lead plaintiff, and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Although four motions were originally filed by class members seeking appointment as lead plaintiff, only two competing motions remain: one by Ron Nabhan and Michele Nabhan (the "Nabhans"), and one by Chad Parsons, as Trustee of The Chad Parsons and Wolfgang Bauer Trust UA Nov. 12, 2008 ("Chad Parsons").

    As discussed below, the Court (1) consolidates the two related securities class actions; (2) appoints the Nabhans as lead plaintiffs in the consolidated action; and (3) appoints Block & Leviton LLP as lead counsel for plaintiffs in the consolidated action.

I.   BACKGROUND

A.   Factual Background

Palo Alto Networks is a multinational cybersecurity company that offers enterprise cybersecurity platforms for network security, cloud security, and various cloud-delivered security. Schlaegel Compl. (dkt. 1) ¶ 2. After the market closed on February 20, 2024, Palo Alto Networks announced its financial results for the second quarter of 2024. Id. ¶ 4. As part of that announcement, it lowered both its third quarter and full-year billings and revenue projections. Id. On the same day, Defendant Nikesh Arora, the Chief Executive Officer ("CEO"), explained in an earnings call that the change in projections was "a consequence of us driving a shift in our strategy in wanting to accelerate both our platformization and consolidation and activating our AI leadership." Id. He also told investors that several deals with the United States federal government for "large projects" did not close and resulted in "a significant shortfall in our U.S. federal government business." Id. He noted that he expected the shortfall to continue through the rest of 2024. Id. He also said that "[t]he situation started off towards the end of Q1" and was "worsened in Q2." Id.

The next day, Palo Alto Networks common stock declined by $104.12 per share— from $366.09 per share on February 2024, to $261.97 at the close of markets on February 21, 2024. Id. ¶ 5. That represented a 28.4% decline. Id.

Plaintiffs now bring securities class actions on behalf of all those who purchased or otherwise acquired Palo Alto Networks common stock, or who sold put options of Palo Alto Networks, between August 18, 2023 through February 20, 2024. Id. ¶ 1; see Schwarz Compl. (dkt. 1) ¶ 1 in Schwarz v. Palo Alto Networks, Inc., No. 24-cv-2492. Plaintiffs allege that Defendants Palto Alto Networks, Nikesh Arora, Dipak Golechha (the Chief Financial Officer), and Lee Klarich (the Chief Product Officer) (collectively, "Defendants") made false and/or misleading statements and made material omissions about Palo Alto Networks' business, operations, and prospects during that period, which resulted in significant losses and damages to class members. See Schlaegel Compl. ¶ 6.

### B. Procedural Background

On February 26, 2024, Martin Schlaegel filed a complaint against Defendants asserting claims under Sections 10(b) and 20(a) of the Exchange Act. Schlaegel Compl. ¶¶ 1, 12–15 (the "Schlaegel Action"). On the same day, Schlaegel published noticed of the action, which advised investors in Palo Alto Network securities that they had until April 26, 2024, to seek appointment as lead plaintiff. See Notice (dkt. 4-1). The day before that deadline, Paulina Schwarz filed a complaint also asserting claims under Sections 10(b) and 20(a) of the Exchange Act against the same defendants as the Schlaegel Action. See Schwarz Compl. ¶ 7, 12–15 (the "Schwarz Action").

Both the Schlaegel Action and the Schwarz Action advance substantially the same allegations. Both complaints allege that Defendants made false and/or misleading statements and material omissions about Palo Alto Networks' business, operations, and prospects between August 18, 2023 and February 20, 2024. See Schlaegel Compl. ¶ 3; Schwarz Compl. ¶ 5. Specifically, they allege that Defendants failed to disclose that: (1) Palo Alto Networks' "'platformization' strategy was not being adopted by customers"; (2) as a result, Palo Alto Networks "would be forced to offer significant discounts to entice customers"; (3) Palo Alto Networks' "billing growth" was thus "not sustainable"; (4) Palo Alto Networks "would not close certain deals with the Federal Government in the second quarter of fiscal year 2024"; and (5) as a result, "Defendants' positive statements about the Company's business, operations, and prospects were materially misleading." See Schwarz Compl. ¶ 5; Schlaegel Compl. ¶ 3.

On April 26, 2024, class members Ron and Michele Nabhan, Jagdish Khatiwala, Chad Parsons, and Bhartendu Vyas filed four competing motions to consolidate the related actions, appoint lead plaintiff, and appoint lead counsel.[1] See Nabhans Mot. (dkt. 16); Khatiwala Mot. (dkt. 20); Parsons Mot. (dkt. 24); Vyas Mot. (dkt. 29). On May 3, 2023, Khatiwala filed a statement of non-opposition, conceding that he does not have the largest

---

[1] Parsons and Vyas did not move to consolidate, but neither opposes consolidation. See Parsons Opp. (dkt. 35) at 1 n.2; Vyas Non-Opp. (dkt. 34).

financial interest in the relief sought by the class, as required by the PSLRA. See Khatiwala Non-Opp. (dkt. 33). A week later, Vyas did the same. See Vyas Non-Opp. (dkt. 34). Movants Ron and Michele Nabhan and Chad Parsons continue to seek appointment as lead plaintiffs.

## II.     CONSOLIDATION

Federal Rule of Civil Procedure 42(a) permits consolidation where "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). "Consolidation is within the broad discretion of the district court." In re Adams Apple, Inc., 829 F.2d 1484, 1487 (9th Cir. 1987). In determining whether consolidation is appropriate, a court "should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" See Hessefort v. Super Micro Computer, Inc., 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (quoting Zhu v. UCBH Holdings, Inc., 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010)); see also Huene v. United States, 743 F.2d 703, 704 (9th Cir. 1984). Courts in the Ninth Circuit "have recognized that class action shareholder suits are particularly well suited to consolidation . . . because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved." See Hessefort, 317 F. Supp. 3d at 1060 (quoting Miami Police Relief & Pension Fund v. Fusion-io, Inc., No. 13-CV-05368-LHK, 2014 WL 2604991, at *3 (N.D. Cal. June 10, 2014)).

The Court agrees with the parties that consolidation of the Schlaegel Action and the Schwarz Action is proper. No party has opposed such consolidation. That the complaints differ slightly does not impede consolidation. See 15 U.S.C. § 78u-4(a)(3)(A)(ii) (contemplating consolidation when "more than one action on behalf of a class asserting substantially the same claim or claims" has been filed). Both actions involve common questions of law and fact related to Palo Alto Networks' platformization and consolidation initiatives and contain similar allegations regarding Defendants' public dissemination of false and misleading information to investors during the same time periods. See Schlaegel

4

Compl. ¶ 25–36; Schwarz Compl. ¶ 18–24.  Consolidation is proper because it serves the judicial interest in convenience, there is no reason to think it would increase delay, including each claim in one action will reduce confusion, and no party has articulated a concern regarding prejudice.

Accordingly, the Court orders that:

1. The following actions are consolidated pursuant to Federal Rule of Civil Procedure 42(a) for all purposes including, but not limited to, discovery, pretrial proceedings and trial proceedings:

| Abbreviated Case Name | Case Number |
| --- | --- |
| Schlaegel v. Palo Alto Networks, Inc. | No. 24-cv-1156-CRB |
| Schwarz v. Palo Alto Networks, Inc. | No. 24-cv-2954-CRB |

2. The consolidated cases shall be identified as: In re Palo Alto Networks, Inc. Securities Litigation and the files of this action shall be maintained in one file.  Any other actions now pending or hereafter filed in this District which arise out of the same or similar facts and circumstances as alleged in these related actions shall be consolidated for all purposes as the Court is notified of them.  The parties shall notify the Court of any other action which is pending or filed outside of this District which may be related to the subject matter of these consolidated actions when they become aware of such actions.

3. Every pleading filed in the consolidated action shall bear the following caption:

IN RE PALO ALTO NETWORKS, INC. SECURITIES LITIGATION
_____/   Master File No.
_____/   CLASS ACTION

III. **APPOINTMENT OF LEAD PLAINTIFFS**

The competing movants seeking appointment as lead plaintiff are: (1) Ron and Michele Nabhan (the "Nabhans"); and (2) Chad Parsons, as Trustee of The Chad Parsons and Wolfgang Bauer Trust UA Nov. 12, 2008 ("Chad Parsons").  For the following

reasons, the Court appoints the Nabhans as lead plaintiffs of the consolidated action.

### A.   Legal Standard

A court is to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The plaintiff most capable of adequately representing the interest of class members "is the person or group of persons that" (1) either filed the complaint or filed a timely lead plaintiff motion; (2) has the largest financial interest in the relief sought by the class, as determined by the court; and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23 provides that a party may serve as a class representative if (1) its claims or defenses are typical of those of the class, and (2) it will fairly and adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a).

The Ninth Circuit has established a three-step process for the appointment of a lead plaintiff under the PSLRA. See In re Cavanaugh, 306 F.3d 726, 729–31 (9th Cir. 2002); In re Stitch Fix, Inc. Sec. Litig., No. 18-cv-06208-JD, 2019 WL 3940954, at *1 (N.D. Cal. Aug. 9, 2019); Bruce v. Suntech Power Holdings Co., Ltd., No. CV 12-04061 RS, 2012 WL 5927985, at *1 (N.D. Cal. Nov. 13, 2012). First, the court must determine whether the plaintiff in the first-filed action issued a notice publicizing the pendency of the action.[2] See Cavanaugh, 306 F.3d at 729. Second, the court must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements. Id. at 730. If so, it is entitled to lead plaintiff status. Id. at 732. If not, the court must then consider the plaintiff with the next-largest financial stake and repeat the inquiry. Id. at 730. Third, the court must consider competing plaintiffs' attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. Id. This can be done

---

[2] The PSLRA provides that the plaintiff must publish notice alerting members of the purported class of the pendency of the action, the claims asserted, and the purported class period within 20 days after filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Any member of the purported class may file a motion to serve as lead plaintiff within 60 days of the notice's publication. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

using "proof" that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render the plaintiff incapable of adequately representing the class. Fed. R. Civ. Proc. 23(a); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see In re Network Assocs., Inc., Sec. Litig., 76 F. Supp. 2d 1017, 1021 (N.D. Cal. 1999).

### B. Discussion

The Court addresses each of the three steps to determine the appointment of lead plaintiff: (1) timeliness of lead plaintiff motions; (2) the financial loss requirement; and (3) Rule 23(a) factors. Because the Nabhans prevail at each step, and Parsons has not provided proof to rebut the presumption in their favor, the Court concludes that they are the "most adequate plaintiff" to serve as lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(i).

#### 1. Timeliness

Both the Nabhans and Parsons timely moved for appointment as lead counsel in response to the PSLRA notice. It is undisputed that Schlaegel, the plaintiff in the first-filed action, published adequate notice on February 26, 2024. Both movants timely filed their motions to serve as lead plaintiff on April 26, 2024, which is within the required 60-day time period. See Nabhans Mot. at 10; Parsons Mot. at 6. Thus, both have satisfied the first PSLRA requirement.

#### 2. Financial Loss

Because the PSLRA does not specify how to calculate "largest financial interest," courts determine which movant has the most to gain from the lawsuit through "accounting methods that are both rational and consistently applied." Cavanaugh, 306 F.3d at 730 n.4. Courts consider the "Olsten-Lax" factors to "determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" Richardson v. TVIA, Inc., No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (quoting In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Of the four Olsten-Lax

factors, courts in the Ninth Circuit consider the fourth factor, approximate losses suffered, the most determinative. See Richardson, 2007 WL 1129344, at *4; Bruce, 2012 WL 5927985, at *2; Hessefort, 317 F. Supp. 3d at 1059.

The Nabhans assert that they have suffered an aggregate loss of approximately $486,457.76 in connection with their purchases of Palo Alto Networks securities.[3] See Nabhans Mot. at 8; Walker Decl., Exs. B, C (dkts. 17-2, 17-3). This amount is much greater than the loss claimed by Parsons, who asserts that he suffered a loss of $191,161. See Parsons Mot. at 3; Albert Decl., Ex. C (dkt. 24-4). In fact, Parsons does not dispute that the Nabhans have a larger financial interest than him. See Parsons Opp. (dkt. 35) at 1.

Because the Nabhans have the largest financial interest, they are the presumptive lead plaintiffs.

### 3. Rule 23(a) Factors

Rule 23(a) provides that a class action may proceed if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The typicality and adequacy requirements of Rule 23 are the Court's main focus in this context. See Richardson, 2007 WL 1129344, at *4; Cavanaugh, 306 F.3d at 730. The presumptive lead plaintiff "need only make a prima facie showing of its typicality and adequacy." Hessefort, 317 F. Supp. 3d at 1060–61. The PSLRA requires "proof" to overcome the presumption entitling the plaintiff with the largest financial interest in the litigation to appointment as lead plaintiff; speculative assertions are insufficient. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); Armour v. Network Assocs., Inc., 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001).

---

[3] With regard to Palo Alto Networks common stock, the Nabhans (1) purchased 36,681 total shares, (2) purchased 8,296 net shares, (3) expended $2,744,73.8 in net funds on its purchases, and (4) incurred losses of approximately $486,457.76 in connection with its purchases. See Nabhans Reply (dkt. 36) at 5; Walker Decl., Exs. B, C.

8

Because there is no dispute about numerosity or commonality, the Court addresses only adequacy and typicality below. The Court concludes that the Nabhans have made a sufficient showing to satisfy the Rule 23(a) factors.

### i. Adequacy Requirement

The test for adequacy is whether the presumptive lead plaintiff and its counsel have any conflicts of interest with other class members, and whether they will prosecute the action vigorously on behalf of the class. See Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

The Nabhans assert that they have made a prima facie showing of adequacy. First, they point to their assertion that they are not "aware of any conflicts between their claims and those asserted by the class." Nabhans Mot. at 9. Second, they highlight their substantial financial interest, higher than any other movant, which "indicates that they have the requisite incentive to vigorously represent the putative class's claim." Id. Third, they assert that they have "selected qualified counsel, highly experienced in securities litigation." Id.

Parsons does not dispute any of the Nabhans' above contentions. Rather, he argues that the Nabhans do not meet the adequacy requirement because their motion was "devoid of any biographical information in support of their prima facie showing of adequacy apart from their names." See Parsons Opp. at 4. He contends that the Court needs certain information about the Nabhans—including their state of residence, occupations, relationship to one another, investing experience, and nature of investment—to make a "holistic evaluation of adequacy" and ensure that they have the "requisite ability to lead a class of potentially thousands of harmed investors." Id. at 3–4.

The Nabhans disagree that they needed to include such biographical information in their motion, noting that they included all the information required by the PSLRA. Id. at 3 (citing 15 U.S.C. §78u4(a)(2)(A)). Even so, they argue that they did provide much of that information. According to the Nabhans, their opening brief makes clear that they are a married couple. Id. at 2–4, 6, 8–9 (referring to the movants as Mr. and Mrs. Nabhan).

9

And the attached exhibits, which show that they suffered financial loss after purchasing Palo Alto Networks common stock in their joint account, underscore their relationship and demonstrate the nature of their investment. See Walker Decl., Exs. B, C (records from joint account). The Nabhans also submitted a certification attached to their motion, stating that they are "willing to serve as representative parties on behalf of a class, including providing testimony at deposition and trial, if necessary." Walker Decl., Ex. B at 2.[4]

The Court finds that the Nabhans have made a prima facie showing of adequacy under Rule 23(a). Neither the Nabhans nor their counsel have conflicts of interest with any other class members. See Staton, 327 F.3d at 957. Additionally, the Nabhans have suffered significant financial loss—most of any movant, by far—and are willing to serve as representatives, including by providing testimony if needed. See id. The Court also agrees that the Nabhans' initial motion and attached exhibits make clear that they are a married couple who suffered loss in connection with Palo Alto Networks common stock in their joint account. These facts in combination convince the Court that the Nabhans have made a sufficient showing of adequacy.

Because the Nabhans have the largest financial interest and have made a preliminary showing of adequacy under Rule 23(a), Parsons must provide "proof" of inadequacy to overcome the presumption in their favor. See 15 U.S.C. § 78u-4-(a)(3)(B)(iii). Parsons fails to provide any such proof. Accordingly, the Court finds that the Nabhans have met the adequacy requirement.

### ii. Typicality Requirement

The test of typicality is whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the presumptive lead

---

[4] In addition, the Nabhans attached a declaration to their reply which states that they reside in Indiana, own two restaurants, and have approximately 20 years of investing experience. See Reply Decl. (dkt. 40-1) ¶¶ 2, 3. Parsons urges the Court to disregard such evidence because it is untimely. See Parson Reply (dkt. 39) at 1. Because this biographical information is unnecessary to make a sufficient showing of adequacy here, see infra, the Court need not determine whether it should consider the declaration. As Parsons pointed out in the hearing, this Court has appointed lead plaintiffs who did not submit declarations in several cases over the past decade.

plaintiff, and whether other class members have been injured by the same course of conduct. See Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Additionally, the presumptive lead plaintiff may be atypical if it is subject to "unique defenses which threaten to become the focus of the litigation." See id. (citing Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), abrogated by Microsoft Corp. v. Baker, 137 S. Ct. 1702 (2017)).

Parsons makes the same argument about typicality as he did for adequacy—that the Nabhans fail to present sufficient biographical evidence to establish a prima facie case of typicality. See Parsons Opp. at 4. His argument fails for the same reason.

The Court's typicality determination is based not on biographical information, but on whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." See, e.g., Villanueva v. Proterra Inc., 2023 WL 7003253, at *4 (N.D. Cal. Oct. 23, 2023) (citing In re Twitter Inc. Sec. Litig., 326 F.R.D. 619, 629 (N.D. Cal. 2018). The Nabhans have made a sufficient prima facie showing of typicality under this standard. First, the Nabhans assert that their claims are typical of the class because they "seek the same relief and advance the same legal theories as the Class." See Nabhans Resp. at 5 (citing Richardson v. TVIA, Inc., No. C 06 06304 RMW, 2007 WL1129344, at *5 (N.D. Cal. Apr. 16, 2007) ("[Movant] shares substantially similar questions of law and fact with the members of the class because the claims arise from the same alleged course of conduct by defendants. His claims are presumptively typical of the members of the class."). Second, the Nabhans note that they "are not subject to unique defenses." See Nabhans Mot. at 9. These assertions are supported by the Nabhans PSLRA certification and loss charts. See Walker Decl., Exs. B, C. Those filings show that, like other class members, the Nabhans "acquired Palo Alto Networks stock during the Class Period at allegedly inflated prices and suffered damages when Defendants' alleged misconduct came to light." See Nabhans Mot. at 9. Again, Parsons fails to provide any proof to rebut the Nabhans' presumption of typicality. The Court

1  therefore finds that the Nabhans have also met the typicality requirement.

2  Because the Nabhans filed a timely motion, have the largest financial loss, and meet
the Rule 23(a) factors, the Court appoints them lead plaintiffs of the consolidated action.

### IV.   APPOINTMENT OF LEAD COUNSEL AND LIAISON COUNSEL

Under the PSLRA, the Court must also appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). While the appointment of counsel is made subject to the approval of the court, the lead plaintiff gets to select lead counsel for the class. See Cavanaugh, 306 F.3d at 732 ("[T]his is not a beauty contest; the district court has no authority to select for the class what it considers to be the best possible lawyer or the lawyer offering the best possible fee schedule."). The Nabhans have selected the firm of Block & Leviton LLP, a law firm with significant experience in prosecuting complex securities class actions. See Firm Resume (dkt. 17-4). There is no reason to disagree with their selection.

Accordingly, the Court appoints Block & Leviton LLP as lead counsel for plaintiffs in the consolidated action.

### V.   CONCLUSION

For the foregoing reasons,

1. The Court CONSOLIDATES the above-captioned securities class actions as ordered above.

2. The Court APPOINTS Ron Nabhan and Michele Nabhan as lead plaintiffs in the consolidated action.

3. The Court APPOINTS Block & Leviton LLP as lead counsel for plaintiffs in the consolidated action.

**IT IS SO ORDERED.**

Dated: August 9, 2024



CHARLES R. BREYER
United States District Judge